WILLIAM G. THIEL, Corporation Counsel Eau Claire County
You have asked for an interpretation of sec. 979.125, Stats., enacted by ch. 246, Laws of 1977.
You ask:
 [W]hether the express provisions allowing the parents to prevent an autopsy from being performed in the case of Sudden Infant Death Syndrome would preclude the Medical Examiner *Page 56 
[or coroner] from performing an autopsy where, in his professional judgment, pursuant to Section 979.20 (1) (a) said death occurred under circumstances which are unexplained, unusual or suspicious?
You go on to state that the Eau Claire County Medical Examiner has "related that it is extremely difficult, if not impossible, to ascertain whether child abuse has occurred, or on the other hand, what the actual circumstances were which occasioned the death of the infant unless an autopsy is performed."
With one exception stated below ("Conclusion," item "c)"), I have concluded that sec. 979.125, Stats., was not intended to, and does not, operate as a limitation on the authority of the coroner under secs. 979.01 and 979.121, Stats.
Although your question refers to autopsies performed pursuant to sec. 979.20 (1)(a), Stats., that is not the operative section authorizing the taking of an autopsy. Rather, sec. 979.20 (1)(a), Stats., sets forth one of the circumstances in which the reporting of a death ultimately to the medical examiner or coroner is mandatory. The circumstances under which an autopsy may be conducted or ordered by a coroner (or medical examiner pursuant to sec. 979.15, Stats.) are dictated by sec. 979.121, Stats., which reads as follows:
 AUTOPSIES. The coroner may conduct an autopsy or order the conducting of an autopsy upon the body of a dead person any place within the state and disinter the body if necessary in cases where a coroner's inquest might be had as provided in s. 979.01
notwithstanding that no such inquest is ordered or had.
Therefore, the actual conditions under which a coroner or medical examiner may conduct or order the conducting of an autopsy are to be found in sec. 979.01, Stats., being precisely those conditions under which a coroner or medical examiner is to make an inquest into a death. Section 979.01, Stats., reads in pertinent part as follows:
 INQUESTS. Whenever the district attorney has notice of the death of any person and from the circumstances surrounding the same there is any reason to believe that murder, manslaughter, homicide resulting from negligent control of vicious animal, *Page 57 
homicide by reckless conduct, homicide by negligent use of vehicle or firearm, or homicide by intoxicated user of vehicle or firearm may have been committed, or that death may have been due to self-murder or unexplained or suspicious circumstances . . . he shall forthwith order and require the coroner or deputy coroner to make an inquest as to how the person came to his death . . . . Nothing herein contained shall be construed as preventing such coroner from holding an inquest under the circumstances hereinabove specified without being first notified by the district attorney to hold such inquest.
Section 979.125, Stats., as created by ch. 246, Laws of 1977, effective April 22, 1978, reads as follows:
 AUTOPSY FOR SUDDEN INFANT DEATH SYNDROME. If a child under the age of 2 years dies suddenly and unexpectedly under circumstances indicating that the death may have been caused by sudden infant death syndrome, the coroner or medical examiner shall notify the child's parents or guardian that an autopsy will be performed, at no cost to the parents or guardian, unless the parents or guardian object to the autopsy. The coroner or medical examiner shall conduct or shall order the conducting of an autopsy at county expense, unless parent or guardian requests in writing that an autopsy not be performed. If the autopsy reveals that sudden infant death syndrome is the cause of death, that fact shall be so stated in the autopsy report. The parents or guardian of the child shall be promptly notified of the cause of death and of the availability or counseling services.
Although "sudden infant death syndrome" is nowhere defined in the statutes, an accepted definition was set forth in a Legislative Council staff memorandum to the Senate Committee on Human Services, dated September 14, 1977, relating to Senate Substitute Amendment 2 to 1977 Senate Bill 122, the bill that spawned ch. 246 of the Laws of 1977. The definition as set forth in that memorandum was taken from a 1975 publication of the U.S. Department of Health, Education and Welfare, The Sudden InfantDeath Syndrome, by J. Bruce Beckwith, M.D. That definition is as follows: "`The sudden death of any infant or young child, which is unexpected by history, *Page 58 
and in which a thorough postmortem examination fails to demonstrate an adequate cause for death.'" (Interestingly, a thorough postmortem examination (autopsy) is a prerequisite to come within this definition.)
The staff memorandum goes on to explain that the studies have indicated a strong correlation between the age of the infant or child and the incidence of sudden infant death syndrome, citing the Beckwith article as stating that half of sudden infant death syndrome deaths occur by age three months and ninety-one percent occur by age six months. In a study conducted by Beckwith involving 425 infant death syndrome cases, none occurred after one year, although Beckwith indicated that he was aware of a few cases which occurred as late as a year and a half after birth. Although not mentioned in the staff memorandum, the Beckwith study also revealed that fifteen percent of "sudden and unexpected infant deaths" were found, after postmortem, to be explained by traditional causes, i.e., not sudden infant death syndrome. Beckwith, supra at 2, 3. A coroner or medical examiner will certainly want to take such statistical factors into consideration in initially evaluating the possibility that the cause of infant death may have been other than sudden infant death syndrome.
To the extent that the term "unexplained . . . circumstances" in sec. 979.01, Stats., overlaps the definition of sudden infant death syndrome, it may be considered to create an ambiguity with regard to the interpretation of sec. 979.125, Stats. The latter section mandates the conduct of an autopsy in cases of sudden and unexpected infant death, unless parent or guardian objects. The former section, read in conjunction with sec. 979.121, Stats., would permit the conduct of an autopsy in such cases, i.e., "unexplained . . . circumstances," without restriction. This ambiguity may be resolved, however, by a determination of legislative intent which, I believe, may be best ascertained here from a reading of the new law itself, there being no legally admissible pertinent legislative history on this bill.
 Before the true meaning of a statute can be determined where there is genuine uncertainty as to how it should apply, consideration must be given to the problem in society to which the legislature addressed itself, prior legislative consideration of the problem, the legislative history of the statute under litigation, *Page 59 
and the operation and administration of the statute prior to litigation.
2A Sands, Sutherland Statutory Construction sec. 45.02, p. 5 (4th ed. 1973). (Emphasis supplied.)
Certainly, the Legislature has manifested a concern for both the victims and families of victims of sudden infant death syndrome. Section I of ch. 246, Laws of 1977, created sec. 146.025, Stats., which reads as follows:
 SUDDEN INFANT DEATH SYNDROME. (1) The department shall prepare and distribute printed informational materials relating to sudden infant death syndrome. The materials shall be directed toward the concerns of parents of victims of sudden infant death syndrome and shall be distributed to maximize availability to the parents.
 (2) The department shall make available upon request follow-up counseling by trained health care professionals for parents and families of victims of sudden infant death syndrome.
Section 979.125, Stats., is a recognition by the Legislature of the need for thorough postmortem examinations (autopsies), presumably as an aid to research and manifestly as an initial step to follow-up family counseling for parents and families of victims of sudden infant death syndrome. Additionally, the Legislature saw fit to balance this new mandatory requirement for autopsy with the private concerns of a parent or guardian obviously having no responsibility for the cause of death. There is no evidence of a contrary legislative intent or of any other legislative intent to restrict the rights of the coroner or medical examiner in carrying out his or her duties of office in accordance with the other provisions of ch. 979, Stats.
Further support for this position is found in the application of other pertinent rules of statutory construction. Chapter 246, Laws of 1977, is titled "An Act to create 146.025 and 979.125 of the statutes, relating to autopsies for victims of sudden infant death syndrome and providing information and counseling and increasing an appropriation." It is an act independent and original in form not expressly purporting to amend any existing statutory provision. By implication only, secs. 979.121 and979.01, Stats., may be considered to be amended in the limited situation involving an autopsy of a child under *Page 60 
the age of two who dies suddenly and unexpectedly under circumstances indicating that the death may have been caused by sudden infant death syndrome. There is a presumption against any change in legal rights arising out of acts that are independent and original in form and, even "an amendatory act is not to be construed to change the original act or section further than expressly declared or necessarily implied." See Sutherland, supra
at Vol. IA, sec. 22.30, P. 179.
Even though sec. 979.125, Stats., may by implication amend prior existing statutory provisions, it should be read together with those provisions as if they had been originally enacted as one section. "Effect is to be given to each part, and they are to be interpreted so that they do not conflict." Id., sec. 22.34, P. 196. "All the provisions of both are to be given effect and reconciled if possible." Id., sec. 22.35, P. 197. Conclusion
Conclusion
Applying those rules, together with the aforementioned analysis of legislative intent, to the construction of sec. 979.125, Stats., it is my opinion that:
 a) In every situation in which the coroner or medical examiner believes that the death of a child under two years may possibly have been caused by sudden infant death syndrome, he or she has a duty to notify the child's parents or guardian and, further, to conduct or order the conducting of an autopsy at county expense if the parent or guardian does not object in writing.
 b) Notwithstanding the objection of parent or guardian, if the coroner or medical examiner has any reason to believe that a child's death may have been caused other than by sudden infant death syndrome, but under circumstances set forth in sec. 979.01, Stats., he or she may conduct an autopsy or order the conducting of an autopsy pursuant to the provisions of sec. 979.121, Stats.
 c) If the coroner or medical examiner has no reason to believe that the death of a child under the age of two was caused *Page 61 
by circumstances set forth in sec. 979.01, Stats., other than sudden infant death syndrome, he or she is precluded from conducting or ordering the conducting of an autopsy over the written objection of the parent or guardian.
BCL:JDH